### Nicoll and another *vs.* Gardner & M'Cormick.

The *owner of a wharf* may distrain for wharfage on any goods or chattels on board a ship or vessel which has sued his wharf, although the vessel has removed from the wharf: in other words, the distress may be made at a *place* different from that where the wharfage accrued, provided such place be within the jurisdiction authorizing the process by distress: thus *it was held*, where wharfage accrued in the *seventh ward* of the city of New York, that a distress might be made in the *eleventh ward*.

Whether, if a vessel be removed from the place where the wharfage accrued, and the property passes into the hands of a *bona fide* purchaser previous to the distress, the owner of the wharf loses his right to distrain—*quere*.

The plaintiffs commenced an action of *replevin* in the common pleas of New York, which was removed into this court by *certiorari*. The action was for the *taking* from on board a ship called the Robert Fulton, two chain cables, one hemp cable, and sundry other articles. The declaration contained three counts: in the first, the goods were alleged to have been taken from on board the ship Robert Fulton, lying and floating in the waters of the East River, at the city of New-York, adjacent to the foot of *Stanton street.* In the *second,* the goods were alleged to have been taken at the *seventh ward* of the city, and in the *third* count they were alleged to have been taken at the *eleventh ward* of the city. The defendants pleaded, 1 *Non cepit* to the whole declaration; and 2. *Non cepit* as to one hemp cable and one anchor, *part of the goods,* &c. mentioned in the declaration.   The defendants also put

in *seven avowries.* The *fourth avowry*, in answer to the *first count* of the declaration, set forth that Gardner was the owner of a *wharf* in the *seventh ward* of the city ; that the ship *Robert Fulton*, of the burthen of 550 tons, used and occupied the wharf for 638 days, from 1st June, 1825, to 1st March, 1827, whereby the master and owners of the vessel became liable to pay to Gardner $1,87½ for each day the ship laid at the wharf; that after $1196,$\frac{25}{100}$ had become due for wharfage, Gardner required payment, or security for payment ; that such payment was not made or security given ; that on the 1st March, 1827, the vessel containing the said goods, &c. was *fraudulently* removed from the wharf of Gardner *to the place in which, &c.* with the intent to *hinder him from distraining* for the wharfage ; that thereupon, Gardner, in his own right, and M'Cormick as his bailiff, in pursuance of the provisions of the *act to reduce certain laws relating to the city of New York into one act, passed 9th April*, 1813, caused the *goods and chattels, being in and on board the said vessel, to be taken as and for and in the name of a distress* for the amount of wharfage due to Gardner ; concluding with a verification and prayer of judgment, &c. The *fifth avowry*, in answer to the *third count* of the declaration, is precisely similar to the fourth avowry. The *sixth avowry* acknowledged the taking of the *residue* of the goods, &c. *being in and on board the vessel, in the place in which* &c. as set forth in the *first count* of the declaration, for the cause set forth in the fourth avowry, (omitting the statement of the removal of the vessel from the *seventh ward to the place which*, &c.) The *seventh avowry*, in answer to the *third count* of the declaration, is like the *sixth avowry*, except that it acknowledges the taking of the goods *generally*, and not merely the *residue.* To these four avowries the plaintiffs *demurred*, and the defendants joined in demurrer.

*C. F. Grim*, for the plaintiffs, insisted that the *fourth* and *fifth* avowries were bad, because they acknowledged the taking of the goods, &c. in the *eleventh ward* of the city of New York, whilst it was admitted that the wharfage accrued in the *seventh ward* of the city; he contending that the owner of the

wharf had no right to follow the goods on board of a ship after she has left his wharf, and levy on the same for warfage due to him. The *sixth* and *seventh* avowries he contended to be bad, because they admitted the taking of the goods, &c. in the *eleventh ward*, without showing that such goods were *on board the vessel* while she lay at the defendants' wharf, in the *seventh ward*, or were in any way liable to the distress ; for though it should be adjudged that the defendants had the right to follow goods on board a vessel and to distrain for wharfage, he insisted that such right could not be exercised unless the goods taken were on board of the vessel previous to her removal.

*G. B. Hall,* for the defendants.

*By the court,* NELSON, J.. By the 212th section of the *act to reduce the several laws relating to the city of New York into one act 2 R. L.* 429, it is made lawful for the owners of wharves in that city to ask and receive to their own use *fixed rates of wharfage* for all ships and vessels using their wharves, and amongst others, for every ship of the burthen of 550 tons, and under the burthen of 600 tons at the rate of $1,87\frac{1}{2}$ per day. And by the 217th section of the same act it is provided, that when any ship or vessel shall have laid 24 hours at any wharf, and the master or owner refuses or neglects to pay wharfage, or give satisfactory security for the payment of the same, being required by the owners or wharfinger, by notice in writing, left on board with the master or one of the hands belonging to the ship, it shall be lawful for the owner or wharfinger *to distrain for such wharfage* on any *goods or chattels found on board such ship or vessel;* and so from time to time, as often as twenty-four hours' wharfage shall become due ; and the goods and chattels so distrained to sell and dispose of in the same manner as is provided in the case of rent.

At common law the remedy by distress was incident to the right to toll, *Viner's Abr. tit. Toll, H. ; Cro. Eliz.* 558 ; and in a port town any person had a right to establish a wharf upon his own land, for his individual benefit, and charge such toll as he pleased, or at such rates as he and his customers

agreed upon. He possessed the right to erect the wharf be-

cause it was the lawful use of his own soil. After its erection and devotion to the public use, the public became so far interested in it that he was bound to repair it, and was liable to indictment for neglect, and the enjoyment of it could not be denied ; and for these considerations the common law gave him the remedy for his toll by distress. *Hale de Portibus Maris,* 77. *Bradley on Distress,* 133. By the act above referred to, the legislature of this state have undertaken to regulate this right by giving the corporation of the city of New York the power to direct the erection of wharves, reserving the right of the owner of the adjacent soil to the use and profit of them, (he being at the expense of the erection,) fixing the rates of toll, and giving the common law remedy for its collection by distress.

The material question arising upon the pleadings in this case is, whether the owners or wharfingers can distrain the goods of the vessel for which toll is due at any other *place* than at the *wharf* where the toll accrued ? In this case the wharf of the defendants was situate in the *seventh ward,* where the toll became due, and the taking by distress was in the *eleventh* ward, the vessel having been removed there after due notice and demand of toll. It is contended, in analogy to a distress for rent, that the goods can be taken only upon or at the premises where the toll accrued ; and it is supposed also, that the statute giving this remedy sustains that view. This, I think, is a mistake, as the reference to the remedy for rent applies solely to the manner of *selling* and *disposing* of the distress. The *levy* must be regulated by the rules of the common law. Rent, in a technical sense, is supposed to issue out of the land on which it is reserved, and the remedy by distress is considered as belonging to the land, following the rent and not the person of the tenant. 2 *Black. Comm.* 41, 2. 3 *Inst.* 131. *Co. Litt.* 285, *Thos. ed. n. (H.) Viner, tit. Dist. M.* The remedy by distress at common law is not confined, as we have already seen, to the case of rent in arrear. It was the appropriate remedy for fines imposed and amercements made in a court leet, 2 *Inst.* 70, 74 ; and in the sheriff's tourn, 2 *Hawk* 60, 61 ; also when warranted by custom for fines and amercements imposed by a steward of a court baron ; besides

the numerous cases where it is given by express statute. *Co. Litt.* 269, *n.* (*B.*) 2 *Bacon, tit. Distress, G.* Now it is obvious, in all these cases, the principle contended for by the plaintiffs can have no application, and that the only limit in the operation and effect of the process is the jurisdiction of the court or officer issuing it, and so it has been decided. 2 *Bac. tit. Dist. G.* 2 *Hawk.* 60, 1. *Viner, tit. Dist. L.* The statute of Marlbridge, which prohibited the taking of a distress in the highway, did not apply to these cases, it being construed to have reference only to distress for *rent.* Neither could the beasts of a stranger be taken, though they may have been *levant et couchant* on the land of the party against whom it was issued. A distress in these and the like cases is looked upon in the nature of a common law *execution*, to enforce a personal duty, rather than a distress for the collection of rent, which is a remedy adopted as a substitute for the forfeiture of the estate, and that pledges the annual profits of it, liable to seizure by the landlord. 1 *Ld. Raym.* 386. 1 *Burr.* 588. *Bac. tit. Dist. G.* 255, 341. 1 *Selw.* 495. This was the view of Lord Holt, in the case of *Vinkensterne* v. *Ebden*, 1 *Ld. Raym.* 384, which was an action of trover for an anchor, sails and cable, taken by distress for *port toll*, belonging to the town of Newcastle. Wharfage is a species of *port toll. Hale de Portibus Maris*, 77. *Bradley on Dist.* 133.

The rates of wharfage fixed by the statute are not technically rent, nor are they necessarily or fairly within the term. The property to be seized need not be upon the premises or wharf, but may be floating upon the waters, and upon the nice and strict rules of common law distresses for rent *eo nomine*, beyond the reach of the process. The owner or master is not a tenant, and the ordinary security or pledge subject to be seized for the rent, does not exist in the case of toll. There is nothing, therefore, in the reason or fitness of the rules concerning distresses for rent, that recommends the application of those rules to this case, and nothing short of their settled application would lead us to such a conclusion. The process in this case should be viewed chiefly in the light of a common law execution to enforce the collection of a sum or sums fixed by the law, and which is valid and operative for the purpose

for which it was given, to the extent of the jurisdiction authorizing it. If the vessel be removed, and the property comes to the hands of a *bona fide* purchaser, for a valuable consideration, previous to the levy by the distress, it may be a question whether it would be held; but that question it is not now necessary to consider.

The 6th and 7th avowries are substantially good. It is true it does not appear *expressly* that the goods seized were on board of the ship while she lay at the defendants' wharf; though it does perhaps *impliedly*, if the statute authorizes such only to be seized, as it is averred they were seized pursuant to the statute; but we see nothing in the act limiting the taking to such goods. The statute provides that " it shall be lawful for the owner or wharfinger to distrain for such wharfage *on any goods or chattels found on board such ship or vessel.*"

Judgment for defendants on demurrer.